07-21228.of

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 07-21228-CV-BROWN

**THIS IS A CONSENT CASE**

RICHARD W. SCHAIR, et al.,

    Plaintiffs,

vs.

PHILIP A. MARSTELLER, et al.,

    Defendants.
_____/

**ORDER GRANTING MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

**This matter** is before this Court on Defendant Philip A. Marsteller's ("Marsteller") Motion to Dismiss for Lack of Personal Jurisdiction (D.E. 64), filed April 4, 2008. The Court has considered the motion, the response, the reply and all pertinent materials in the file.

**Procedural History**

In a prior Order Granting Defendant Philip A. Marsteller's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2), the Honorable Jose E. Martinez fully set forth the applicable case law relative to the legal standards to be applied by the Court when determining whether to exercise personal jurisdiction over a nonresident defendant. See DE 45. The Court adopts that discussion by reference herein.

In that Order, the Court found that Plaintiff had alleged sufficient facts to satisfy Florida's long arm statute, specifically Fla. Stat. § 48.193(1)(b). The Court further found that because

Plaintiffs had failed to allege any facts that would indicate that Marsteller's contacts with the state of Florida were sufficiently continuous, systematic or substantial for Florida to assert general jurisdiction over Marsteller, Plaintiffs would have to satisfy the requirements of specific jurisdiction, which are:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

McGow v. McCurry, 412 F.3d 1207, 1214 (11th Cir. 2005) (quoting Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994) (internal quotations, punctuation and citation omitted)). The Court found that although the alleged conduct satisfied the first criteria, Plaintiffs had failed to present sufficient evidence that Marsteller purposefully availed himself of the protections and benefits of the state of Florida.

In the Amended Complaint, Plaintiffs have alleged the following:

> 10. On information and belief, on multiple occasions each year, Marsteller purposely decides to travel from Dallas, Texas to Brazil, stopping over in Miami (sometimes overnight, if not longer), even though he could reach Brazil from Dallas, Texas without any need to be in Miami.
>
> 11. As alleged above, Marsteller controls all of Amazon Tours' business activities. That would include its marketing and sales activities. At all times relevant, Amazon Tours' internet website has stated the following:
>> "As a service to our clients, Amazon Tours reserves discounted group space for round trip international flights between Miami and Manaus, Brazil."
>
> 12. On each trip that Marsteller makes with a group which enjoys this Miami-dependent discounted air travel, as opposed to non-discounted, alternative flight options, Marsteller personally and purposefully avails himself of these discounted flight options. On information and belief, Marsteller and Amazon Tours also purposefully avail themselves of discounted, recurring contractual hotel rates in Miami hotels, where they lodge on one or more nights, on multiple occasions each year.

2

Am. Complt. ¶¶ 10-12.

## Discussion

Assuming that Plaintiffs' new allegations are sufficient to establish minimum contacts with Florida, the burden shifts to Marsteller to produce evidence refuting such allegations. Milligan Elec. Co. v. Hudson Constr. Co., 886 F. Supp. 845, 849 (N.D. Fla. 1995). Marsteller has submitted an affidavit in which he states that he travels to Brazil five to eight times per year during the fishing season for business purposes. Marsteller Aff. ¶ 5. The flights originate in Texas, connect in Miami, and end in Manaus in the Brazilian State of Amazonia. Id. He denies that Miami is a feature of the trips offered by Amazon Tours, and states that "[t]he customers of Amazon Tours typically connect in Miami because the only direct flight to Manaus that originates in the United States originates in Miami, Florida." Id. He states that without going through Miami, the only other routes to Manaus, Brazil would be through another city in Brazil, Sao Paolo or South America, which are more costly, lengthy, and inconvenient. Id. ¶ 6. He denies that he has stayed overnight in Miami in the last five years and denies that he has purchased any contractual hotel rates in Miami in the last fifteen years. Id.

In the Response, Plaintiffs' counsel complains that Marsteller fails to explain why he chooses to travel through Miami, and further states that "if, as the undersigned has done, the Court were to go on the internet to look at flight options from Dallas/Fort Worth (where Marsteller lives) to Manaus, Brazil, the Court will see that there are many one-stop options which do not, in any way, involve a stop in Miami or Florida." Resp. p. 4 (citing Chaiken Aff.) (emphasis in original). Plaintiffs additionally emphasize the discounted nature of the Miami flights.

As an initial matter, the Court agrees with Marsteller that Plaintiffs' counsel is improperly acting as a witness on this issue. See Putnam v. Head, 268 F.3d 1223, 1246 (11th Cir. 2001) (stating

that lawyers should not provide testimony in cases in which they are also advocates.) That notwithstanding, the non-Miami one-stop options which Mr. Chaiken references are not located in the United States, but rather in a foreign country. In rebuttal of Mr. Chaiken's affidavit, Marsteller has presented the affidavit of travel agent Clay Alvernaz, who states that "[i]n fact, there is only one direct, non-stop scheduled commercial flight from the United States to Manaus, Brazil," which is through Miami, and all of the other flight options from the United States to Manaus, Braziil which have flight connections in Brazil "require substantial additional travel time, approximately ten (10) to fifteen (15) hours, because these connections require one to travel South to Sao Paolo or Rio de Janeiro, Brazil and then connect back North to Manaus, Brazil." Alvernaz Aff. ¶¶ 5, 6. Mr. Alvernaz additionally discusses concerns such as security checks and passport and visa requirements of these cities which further make traveling through Miami the most practical option. Id. at ¶ 7.

The Court finds that Marsteller has sufficiently rebutted Plaintiffs' allegations that he personally stayed overnight in Miami and that he has purchased any contractual hotel rates in Miami. The Court further finds that Marsteller's limited travel though Miami International Airport due to the convenience of the route is not sufficient contact upon which to base a finding that he has purposely availed himself of the privilege of conducting activities within Florida, thus invoking the benefits and protections of its laws. Moreover, these limited contacts with Florida are not such that Marsteller personally should reasonably anticipate being haled into court here. See McGow, 412 F.3d at 1214.[1]

---

[1] With respect to the allegations concerning a group discount, even if true, the purchase of group rate flights in Miami is not enough to warrant a finding of in personam jurisdiction where the cause of action is not related to the purchase of those tickets. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984). Finally, Finally, Plaintiffs' argument that "one could reasonably infer that Marsteller chooses to stop in Miami during the fishing season (instead of selecting the other travel route options available to him from Dallas)" because "Miami provides the circumstances and opportunity for Marsteller to be in contact with the Plaintiffs and their customers, who he knows avail themselves of the same discounted travel arrangements during the

Even if the Court were to find the above contacts to be sufficient, the Court must still examine whether it would be fair to exercise jurisdiction over Marsteller. See Madara v. Hall, 916 F.2d 1510 (11th Cir. 1990). At this stage of the analysis, the Court must examine "[1] the burden on the defendant in defending the lawsuit, [2] the forum state's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interesting obtaining the most efficient resolution of controversies, and [5] the shared interest of the several state in furthering fundamental substantive social policies." Id. at 1517. The Madara court noted that "these considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Id. at 1519 (citing Burger King v. Hall, 471 U.S. 477 (1990).

In his prior Order, Judge Martinez found that factors 2, 4 and 5 did not weigh in favor of exercising jurisdiction. With respect to factor 1, Plaintiffs argue that exercising personal jurisdiction over Marsteller would be fair because Marsteller has filed lawsuits against Plaintiffs and other competitors, including Florida residents, in Texas. Resp. p. 7. The Court agrees with Marsteller that Plaintiffs' argument concerning other litigation in which the parties may not have even objected to jurisdiction is irrelevant to the analysis.

With respect to factor 3, Plaintiffs' interest in obtaining convenient and effective relief, Plaintiffs state that they will be unable to file an action in Texas, "the only other forum where the claims in question could theoretically be asserted," (Resp. p. 8), because the Texas statute of limitations has run. In Madara, despite noting that plaintiff "has a strong interest in obtaining effective relief, particularly because the statue of limitations may have run in many other potential

---

fishing season" (Resp. p. 6., emphasis in original) is mere supposition and does not factor into the Court's analysis.

fora," the Court found that the action should be dismissed due to the lack of minimum contacts with the forum state. 916 F.2d at 1519; see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 574 (2d Cir. 1996) (affirming dismissal based on lack of jurisdiction, noting that the fact that the chosen forum "may be the only jurisdiction in which [plaintiff's] suit is not barred" was "not a permissible consideration in the context of a jurisdictional inquiry" when examining whether plaintiff could obtain "effective" relief) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 778 (1984) ("The question of the applicability of [the forum state's] statute of limitations ... presents itself in the course of litigation only after jurisdiction over respondent is established, and we do not think that such choice of law concerns should complicate or distort the jurisdictional inquiry.")

In sum, the Court finds that there are not exceptional circumstances which make an exercise of personal jurisdiction over Marsteller reasonable in light of the minimal contacts he has with the forum.

Therefore, and the Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that Defendant Philip A. Marsteller's ("Marsteller") Motion to Dismiss for Lack of Personal Jurisdiction be and the same is hereby **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of July, 2008.

STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Jose E. Martinez
    Counsel of record